Good morning, Your Honor. May it please the Court, my name is John Palmer and I represent the appellant, Hector Mercedes Cruz. The issue raised on this appeal concerns the lower court's finding, the lower court judge's finding, that as a matter of inevitable discovery, certain evidence would be allowed to be introduced during the trial. You know, that's one way of framing the issues, but there's another way of framing the issues that has to do with the fact that when your client was picked up outside the Burger King or McDonald's, he first gave one identity and then when questioned about it, he admitted that he'd given the wrong name, which immediately caused some issue about his identity and his immigration status, at which point the fingerprint was taken and submitted and it turns out, lo and behold, he's someone different than what he said and he's not in the country legally. So most circuit courts, every court in the country that has addressed this, says when the fingerprint evidence is taken in that context, limited to that context, you can't suppress the evidence. If that is right, you never reach the inevitable discovery issue. Of course, that's not an issue that was addressed by the lower court, but those cases, I know that's the And this wasn't a situation... I'm sorry, are you saying even if we adopted that rule, this case wouldn't fit into that rule? And if so, why? It does not fit into that general statement. Why? And the reason is that this is a case where the suppressible information that was provided pursuant or after the illegal arrest... The case law says it doesn't matter whether the arrest was legal or illegal. What matters is there was a question about identity, a legitimate question, and the fingerprints were taken for that reason. Well, I would suggest to the court that the cases don't suggest that. You have to read the cases. I have. Okay. Well, we read them differently. But I would suggest to the court that the exception to the rule that the fingerprint and derivative evidence, and the derivative evidence here is not the identity evidence, it's the linking of the fingerprints that were extracted from him as a result of the illegal arrest, the comparison of those fingerprints to latent fingerprints found on the envelopes. That's the distinction. The fingerprints that were taken here, I mean, they... I mean, the sequence is, you know, he essentially confesses to the officer that, yeah, you're right, I'm not Pedro Colon, this is my name, I'm in the country illegally, and then he's promptly arrested. And on the basis of that arrest, he is then booked. Isn't that correct? I mean, that's what happens. And then as part of the normal booking process, his fingerprints are taken. Isn't that correct? Isn't that a proper statement of the sequence here? The sequence is correct. The characterization is incorrect. Okay. In what way? First of all, the arrest, the lower court found that the de facto arrest occurred prior to his admission. Okay, but I don't, my question, I don't care about that, just accept the proposition that he was arrested, and I understand the district court said this was an unlawful arrest, but he was arrested. He has confessed to being in the country illegally. He then goes through a booking process, and as part of that booking process, his fingerprints are taken. Now, one of the arguments I think the government is making is that there is this booking exception with respect to fingerprints. I think that's perhaps not as broad a proposition as Judge Lynch is describing, and the government is making both arguments, but isn't that one of the arguments that the government is making, that there is this booking exception? The routine booking exception, but this was not. Does that apply here? Wasn't this routine booking? No, it wasn't. Why not? First of all, the booking, the purpose of the booking was to establish the facts, or help to establish and corroborate the facts that the agent had elicited from the defendant, i.e. that he was not who he says he was. That was one of the purposes of the fingerprinting. As evidence of that fact, when the, and this was a joint operation between Homeland Security, Treasury, and the FBI, when the comments or the statements were elicited from the defendant in the parking lot, the person who elicited the statements checked with the Treasury agent, should I arrest this person or should I not? It was the Treasury person who was investigating the underlying crime who said no, arrest this person. So this was part of a continuing investigation into this person. It was not a routine booking operation. Why not? It sounds perfectly routine to me. You're saying because there were two agents involved? A routine booking operation is if somebody is arrested for breaking and entering into a dwelling and is taken down to the police station with no investigative purpose except for a routine pickup. Does state police and the local police cooperate? That makes it non-routine? I'm trying to understand what your argument is. My argument is that they were pursuing an investigation to charge this person with being illegally in the country. And pursuant to that investigation, they were fingerprinting him. That was the whole purpose. Well, once he answered the question and said that he was not who he said he was initially, isn't that a basis to arrest him? It is, but that's a fruit of the illegal detention. Well, how was it illegal? It wasn't at least in the beginning a Terry Stopp? It was. It was a Terry Stopp. And so did the routine with the Terry Stopp, wasn't there a right to ask the identifying question? And then he said, well, I'm not that person. I'm someone else. This is where the facts of the case are important. And I'll just recite them from our perspective and from the record, I think. When the defendant and the co-defendant were accosted inside the restaurant, the co-defendant, who was the target of the investigation, was immediately handcuffed and removed. Well, that's not entirely without some question. There's no question the co-defendant was handcuffed. Right, but not... One agent testified that he was handcuffed inside. The other agent testified that he was removed. The record from the un-testifying agent, if you will, there was one agent who actually accomplished the arrest, puts in his report that the defendant was taken into custody and removed. Counsel, again, you're arguing that the initial detention was without probable cause, but the court has asked you a series of questions based on the premise that that's irrelevant, because he was asked his identity, he gave a name, he then admitted that he had given a false name, and he admitted that he was in the country illegally, at which point they arrested him and in the normal course his fingerprints were taken. Respectfully, Your Honor, I was getting... Counsel, you seem to be... I just want to answer that question. What happened inside, he was asked the questions, the record shows this, he was asked the questions inside. He answered them satisfactorily. The judge ruled, the law court judge ruled, at that point there was no justification to take him outside. That's the illegal arrest, if you will. So, yes... So what, outside, even on your statement of facts, outside he lies about his identity, he admits he has lied, and the police want to follow up. Why isn't that enough to say these fingerprints are not subject to suppression? Because it's a fruit of the illegal detention inside. Okay, sorry. It's with the coincidence... Yes, Judge Lopez has a question. Just because I think, to some extent, I think you're suggesting... When you say the fingerprinting wasn't part of a routine booking exception, I think you're arguing that actually the police had some kind of investigative purpose. Now, what I find puzzling about that is that, yes, there were, as part of the automobile search, there were items found in the vehicle, and ultimately, I mean ultimately, at a later point in time, the defendant's fingerprints are found on, I guess, a document that is in the car, and then through subsequent investigation, they're able to link him to the Social Security fraud and all of the other charges that he's faced for money laundering and so forth. But that all comes much later. They did not know the results of the analysis of what was taken from the vehicle at the time that they fingerprint him after his arrest for being unlawfully in the country. So if you're suggesting that they had some investigative purpose related to all those other charges that are brought against him, I don't see how the sequence of events supports that at all. They had, I agree with the court, they had an investigative purpose with respect to establishing the fact that he was illegally in the country. That is a crime. So it wasn't... What I'm distinguishing this situation from is the normal case dealing with routine booking and fingerprinting has to do with the fingerprinting is unrelated to the reason that they put him in detention. That's the routine booking exception, if you will. Maybe I don't understand what routine booking means. I thought fingerprinting an individual is generally, it's part of the routine booking, so that what was done here was routine in that sense. Especially when there's a question of identity, identification. Well, that's the point, Your Honor. Okay, we've gotten your point. Thank you. I didn't get to the inevitable discovery. That's right, you didn't. Thank you.  Yes, Your Honor. Yael Epstein, appearing on behalf of the United States. Good morning. As the court has already pointed out, every circuit to have addressed this issue has held that fingerprint exemplars taken in the ordinary course of routine booking procedures are not subject to suppression under the exclusionary rule. We set this basic rule in our principal brief. In his reply brief, the defendant does not even so much as address this rule. Counsel, is it fair to say that every circuit has adopted that proposition? I thought some circuits have sort of added an unless to that, unless there's evidence that the fingerprinting was for some investigative purpose, which I think is what your opponent is suggesting. Isn't that perhaps a fairer statement about the state of the law is? Yes, Your Honor. When I said as part of the routine booking procedure, I was presuming within that that there was no other nefarious investigative purpose, but you are correct that that is a better, fairer statement. Judge Motz for the Fourth Circuit articulated the test best, I think, and I think articulated the narrowest view of the booking exception. Do you agree with that? I would agree that the Fourth Circuit has adopted the narrowest set of rules in terms of how broad the investigative purpose might be. And I take it the government is urging this circuit to adopt the Fourth Circuit rule. Your Honor, under any circuit's approach in this case, the defendant does not contend and didn't even raise in his reply brief the fact that there was an investigative purpose in this arrest. Today is the first time that he has raised that. So I'm not sure that whichever rule is adopted, that it would have changed the outcome in this case. Well, it may depend on what you mean by investigative purpose. There was an investigation of who he was, which he caused to happen by lying about his name and then revealing he was in the country illegally. That is correct, Your Honor, but to the extent that the purpose of that investigation was to determine his identity, even the narrowest rule would preclude suppression of the fingerprint evidence in that circumstance. You said earlier that there is an exception, even under the Fourth Circuit rule, for I think what you call nefarious investigations. I'm not certain whether this case requires us to set up an exception. Were we to adopt the rule in the absence of some issue about whether such an exception might arguably be raised by the facts here? I think that's exactly right, Your Honor, in this case, because there is no evidence from the record that there was some nefarious purpose. Except none of the circuits use the term nefarious, I believe. Investigative purpose in this case, as well as no claim by the defense in its reply brief that there was. I think regardless, though, the Supreme Court in Lopez Mendoza did carve out an exception for egregious Fourth Amendment violations like the ones that occurred in Davis and Hayes. So those would stand, notwithstanding the rule adopted in this circuit, if it were to adopt one. If there are no further questions. It might be useful, although we didn't talk before about inevitable discovery, I guess it would be helpful if you could succinctly state what you think was wrong, why we should affirm that. Absolutely, Your Honor. The District Court properly declined to suppress the fingerprint evidence in this case because it found, by preponderance of the evidence, that even absent any unlawful arrest, defendants' fingerprints would have ultimately been discovered. What's striking about the District Court's inevitable discovery analysis is how many steps, how much time is involved in the inevitable outcome. I don't recall seeing cases applying this inevitable discovery doctrine that covers such a broad span of time, involves so many investigative steps. Is that perhaps an erroneous impression? Are you aware of other cases that are like this? I would not call it an erroneous impression, Your Honor. I think that that's right, but I also think that this circuit has been willing to tolerate some sort of attenuation, if you will, in terms of the inferences that might cause inevitable discovery findings. For example, even Nix itself tolerated some inference there that the search party would find a body absent an unlawful concession, notwithstanding hypothetical scenarios which would have made it impossible to have done so. But this court in Bienvenue also affirmed the application of inevitable discovery on the basis of certain discretionary investigative steps that might not have been taken had there not have been an unlawful search of the defendant's home. In that case, it was canvassing local travel agencies to find evidence of the defendant's flight to Colombia. And this court affirmed the application of the doctrine, in part bolstered by the fact of what the government in fact did. They in fact had, notwithstanding having in their possession the information from the unlawful search, went to all the local travel agencies to find evidence of the defendant's flight. So too here, the district court was faced with the thorough manner of this investigation and the investigative steps that they in fact took, and was convinced by a preponderance of the evidence that they would have inevitably found the defendant and lawfully arrested him and fingerprinted him. But we could decide this case under either of these different rationales. And so one question is, sort of, which has greater clarity? Which would be more useful going forward? Do you have any views on that? Sure, Your Honor. I think that the general rule as adopted by most of the circuits, that based on Lopez Mendoza, based on Hudson, that identity-related evidence is not subject to suppression for practical reasons. Have you heard a single judge of this court willing to adopt a broad rule that anything related to identity? No, Your Honor. This court has stated that identity in the sense of the name itself is not subject to suppression, but it hasn't taken up the related question about whether identity-related evidence is suppressible. But I think that there's a natural flow from Lopez Mendoza to that conclusion for practical reasons. What about the Fourth Circuit approach articulated by Judge Motz that Judge Lynch referred to? How do you view that as a rationale? I view that as a fair rationale in light of Lopez Mendoza and its intersection between Davis and Hayes. If there are no further questions, we ask that the judgment be affirmed. Okay. Thank you, counsel. The court will stand in recess for a few minutes.